UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO.: 09-MC-21020-HUCK-O'SULLIVAN

In The Matter Of Arbitration Between

SMITH BARNEY, a division of
CITIGROUP GLOBAL MARKETS, INC.

    Petitioner,

- and -

ALEXIS BRUNET,

    Respondent.

_____/

### RESPONDENT'S MEMORANDUM IN OPPOSITION TO PETITION TO COMPEL ARBITRATION

Respondent Alexis Brunet files his memorandum in opposition to Petitioner Smith Barney's Petition to Compel Arbitration and Incorporated Memorandum of Law ("Petition") [DE No. 1] and requests that the Petition be denied for the following reasons.

## I. INTRODUCTION

Smith Barney admits, as it must, that Mr. Brunet never had any agreement with it to arbitrate any matter. The exhibits attached to the Petition make clear that it is Smith Barney and MHG Holding Inc. ("MHG") who are the parties that agreed to resolve their disputes by way of arbitration. Mr. Brunet was not a party to the Smith Barney/MHG agreement containing the arbitration clause. Mr. Brunet never voluntarily agreed to waive his right of access to the courts and to resolve disputes by way of arbitration, much less the still-undefined claim(s) that Smith Barney apparently intends to assert against him in an arbitration. By its Petition, Smith Barney seeks an unjustified involuntary waiver of Mr. Brunet's rights.

As shown below, in certain instances, a non-signatory to an arbitration agreement may compel a signatory to arbitrate a dispute that the signatory voluntarily agreed, albeit with someone else, to arbitrate. The converse is not true. Only in extremely rare circumstances will a non-signatory to an arbitration agreement be forced to involuntarily abandon his or her right to proceed in court and, instead, arbitrate pursuant to an arbitration clause entered into by others. Neither the agency theory nor the estoppel theory advanced in Smith Barney's Petition justify forcing Mr. Brunet to involuntarily submit to a dispute resolution forum to which he never acquiesced. None of the cases relied upon by Smith Barney support the unprincipled extension of the law Smith Barney seeks. Accordingly, Mr. Brunet respectfully submits that the Petition must be denied.

## II. FACTUAL BACKGROUND

MHG is a British Virgin Islands corporation. To open a securities account, MHG entered into Smith Barney's standard Client Agreement in February 2003. (*See* Petition, Ex. A) Under the Agreement, Smith Barney agreed to act as a broker/dealer for MHG "for the extension of credit and in the purchase or sale of securities, commodities, options and other property." (*Id.*) In a separate document, MHG authorized Mr. Brunet (and another) to make certain investment and other decisions on MHG's behalf with respect to its Smith Barney account. (*See* Petition, Ex. B).

Contrary to Smith Barney's allegation, Mr. Brunet did not "enter[] into a contract with Smith Barney," as Mr. Brunet was not a party to the Client Agreement. (Petition, p. 2) Also contrary to Smith Barney's "belief," Mr. Brunet is not "a beneficial owner of MHG." (*Id.*, p. 2, n. 1) Mr. Brunet has no ownership interest in either MHG or its Smith Barney account. (*See* Declaration of Alexis Brunet, ¶8, attached as Ex. 1)

The unverified Petition alleges that MHG's Smith Barney account has "an uncovered short position and unsecured debit balance." (Petition, p. 3) Although Mr. Brunet is not MHG, does not own MHG, has no ownership interest in MHG's Smith Barney account, and has never agreed to be responsible for that account, Smith Barney now concludes that Mr. Brunet is somehow obligated to cover MHG's "short position" and secure MHG's "debit balance" in its Smith Barney account.[1] (*Id.*) Not only does Smith Barney believe Mr. Brunet should be liable for deficiencies in an account he does not own and never agreed to personally securitize, Smith Barney further contends that, because Smith Barney and MHG agreed to resolve disputes between them by binding arbitration, Mr. Brunet somehow also waived his right to have Smith Barney's yet-unidentified claims against him resolved in court. (*See id.*) The Petition thus seeks to compel Mr. Brunet to involuntarily participate in and be bound by the forthcoming arbitration between MHG and Smith Barney, to which they (but not Mr. Brunet) voluntarily agreed. (*See id.*)

The Client Agreement expressly states that it is MHG and Smith Barney – and those parties only – that agreed to arbitrate any dispute between them pursuant to the Arbitration clause in their Client Agreement. This clause, contained in paragraph 6 of the Client Agreement, provides that:

- Arbitration is final and binding *on the parties*.
- *The parties are waiving their right to seek remedies in court*, including the right to a jury trial.
- Pre-arbitration discovery is generally more limited and different from court proceedings.

---

[1] While not directly at issue in the Petition, Mr. Brunet obviously denies any liability for the "short position" and "debit balance" in MHG's Smith Barney account. Smith Barney has not articulated – and, indeed, cannot articulate – any valid basis for holding Mr. Brunet responsible.

-3-

LAW OFFICES
SHOOK, HARDY & BACON LLP
MIAMI CENTER, SUITE 2400, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 • TELEPHONE (305) 358-5171
607656v2

- The arbitrators' award is not required to include factual findings or legal reasoning, and any party's right to appeal or to seek modification of rulings by the arbitration is strictly limited.

- The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

*I [MHG] agree* that all claims or controversies, whether such claims or controversies arose prior, on or subsequent to the date hereof, *between me and SB [Smith Barney] and/or any of its present or former officers, directors, or employees* concerning or arising from (I) any account *maintained by me with SB* individually or jointly with others in any capacity; (II) *any transaction involving SB* or any predecessor firms by merger, acquisition or other business combination *and me*, whether or not such transaction occurred in such account or accounts; or (III) the construction, performance or breach of this or any other agreement *between us*, any duty arising from the business of SB or otherwise, shall be determined by arbitration before, and only before, any self-regulating organization or exchange of which SB is a member.

(Petition, Ex. A at ¶6 (emphasis added))

The plain language of the Arbitration clause binds only "the parties," which are identified as MHG and Smith Barney. (*See id.*) Although Smith Barney's standard-form Client Agreement chooses to bind Smith Barney's "officers, directors, or employees" to arbitration, the Arbitration clause specifically omits a parallel provision that may have bound MHG's officers, directors, employees, or agents. (*Id.*) Smith Barney, by its Petition, effectively requests that this Court reform the Agreement and belatedly add a provision that would require arbitration with MHG's officers, directors, employees or agents. Neither settled law nor equity supports Smith Barney's attempt to rewrite the contract and thereby bind a non-signatory to involuntarily arbitrate.

### III. ARGUMENT

This Court recently addressed the law with respect to requests to compel arbitration based on New York law, like the one at issue here:

> The Supreme Court has long recognized and enforced a liberal policy in favor of arbitration. However, *arbitration is a matter of contract and a party cannot be*

> *required to submit to arbitration any dispute which he has not agreed to so submit.* Arbitrators derive their authority to resolve disputes only as a result of the parties' agreement to submit the dispute to arbitration. Because parties can only be forced to arbitrate issues where they have specifically agreed to arbitrate, courts hesitate to interpret silence or ambiguity in favor of arbitration out of fear that to do so might force parties to arbitrate an issue they would reasonably have thought a judge, not an arbitrator, would decide.
>
> In determining whether the parties agreed to arbitrate a particular matter, courts are generally required to apply ordinary state law principles as to the formation of contracts. In the instant case, the parties agree that because the [] agreement specifies New York law, New York law should apply herein.
>
> Like the federal common law, New York law also provides that *parties cannot be forced to arbitrate in the absence of an agreement. An agreement to arbitrate requires a clear and unequivocal manifestation of an intention to arbitrate because it involves the surrender the right to resort to the courts*.

*Am. Personality Photos, LLC v. Mason*, 589 F. Supp. 2d 1325, 1329-30 (S.D. Fla. 2008) (citations and internal quotation marks omitted) (emphasis added).

In deciding whether to compel arbitration, "it matters whether the party resisting arbitration is a signatory or not. *A court should be wary of imposing a contractual obligation to arbitrate on a non-contracting party*. Compelling a non-signatory to arbitration requires careful consideration." *Id.* at 1330-31 (citations and internal quotation marks omitted) (emphasis added). The Supreme Court has made clear that nothing in the Federal Arbitration Act ("FAA") "authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). The FAA "'does not require parties to arbitrate when they have not agreed to do so.' . . . 'Arbitration under the [FAA] is a matter of consent, not coercion.'" *Id.* at 293-94 (quoting *Volt Info. Servs., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478-79 (1989)). "It goes without saying that a contract cannot bind a nonparty." *Id.* at 294.

In this case, Mr. Brunet never agreed to surrender his right of access to the courts, let alone surrender that right with respect to the non-specific claim that Smith Barney purports to construct against him here. Because Mr. Brunet is undisputedly not a party to the Client Agreement, there is no "clear and unequivocal manifestation of an intention to arbitrate" by him. *Am. Personality*, 589 F. Supp. 2d at 1330. The Agreement itself – prepared by Smith Barney – clearly identifies the parties bound by the Arbitration clause: MHG; Smith Barney; and Smith Barney's officers, directors, and employees. If Smith Barney intended others such as MHG's agents to be bound by the Arbitration clause, it could have so provided. It did not. By the plain terms of the Agreement, Mr. Brunet therefore is not bound to arbitrate.

Recognizing the significant hurdle it faces in seeking to coerce Mr. Brunet to arbitrate when he never consented to do so, Smith Barney seeks to extend the narrow circumstances where courts have compelled non-parties to arbitrate. "Absent an express agreement to arbitrate, non-signatories can only be compelled to arbitrate a dispute in five limited circumstances: (1) incorporation by reference, (2) assumption; (3) agency; (4) veil piercing/alter ego; and, (5) equitable estoppel." *Id.* at 1330 (New York law). "Anything short of requiring a *full* showing" of one of these theories will not justify coercing a non-signatory into arbitration. *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 780 (2d Cir. 1995).

Smith Barney argues that (A) as an agent of MHG, Mr. Brunet is purportedly bound by MHG's agreement to arbitrate its disputes with Smith Barney and (B) Mr. Brunet is purportedly equitably estopped from avoiding arbitration with Smith Barney. Neither of these arguments has any merit. Smith Barney's Petition to Compel Arbitration must be denied.

## A. Smith Barney Cannot Compel Arbitration Against a Non-Signatory Agent Such As Mr. Brunet

"Traditional principles of agency law may bind a non-signatory to an arbitration agreement." *Thomson-CSF*, 64 F.3d at 777. "A non-signatory may be compelled to arbitrate under an agency theory if a signatory signed the arbitration agreement as the non-signatory's agent." *World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1247 (11th Cir. 2008) (citing *Thomson-CSF*, 64 F.3d at 777).

Here, the facts are exactly the opposite.[2] The party to the Client Agreement was MHG, and it simply authorized Mr. Brunet to sign it on its behalf. Smith Barney now seeks to turn the agency exception on its head by suggesting that every agent who signs an agreement on behalf of his or her principal has voluntarily submitted to arbitration if the agreement contains such a clause. To Smith Barney, this is enough for the Court to coerce Mr. Brunet to arbitrate.

Smith Barney's attempt to shoehorn the facts of this case under the agency exception simply does not fit. Under New York agency law, "where the alleged misconduct of the agent relates to the agent's behavior as an officer or director or the agent's capacity as agent of the corporation, ***courts permit the agent to benefit from arbitration agreements entered into by his or her principals***." *Am. Personality*, 589 F. Supp. 2d at 1330 (emphasis added) (citing *Nardi v. Povich*, 824 N.Y.S.2d 764 (N.Y. Sup. Ct. 2006)). "The purpose of such rule is 'not only to prevent circumvention of arbitration agreements but also to effectuate the intent of the signatory parties to protect individuals acting on behalf of the principal in furtherance of the agreement.'" *Id.* (quoting *Hirschfeld Prods., Inc. v. Mirvish*, 673 N.E.2d 1232, 1233 (N.Y. 1996)). Thus, the agency theory applies when an agent of one signatory seeks to force the other signatory to

---

[2] Smith Barney does has not contend that MHG entered into the Client Agreement as Mr. Brunet's agent; nor could it.

-7-

LAW OFFICES
SHOOK, HARDY & BACON L.L.P.
MIAMI CENTER, SUITE 2400, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 • TELEPHONE (305) 358-5171

607656v2

arbitrate. All of the cases cited by Smith Barney involve that fact pattern. *See Hirschfeld Prods.*, 673 N.E.2d at 1233; *Nardi*, 824 N.Y.S.2d 764, 1006 N.Y. Misc. LEXIS 2070, *3-5; *see also Qubty v. Nagda*, 817 So. 2d 952, 957-58 (Fla. 5th DCA 2002) (holding court should grant motion filed by agent of one signatory to compel arbitration of claims alleged against agent by other signatory).

"The situation is materially different when, as in the case at bar, a signatory seeks to invoke an arbitration clause against a *nonsignatory*." *Legacy Wireless Servs., Inc. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045, 1054 (D. Or. 2004). "Courts have carefully distinguished between these two categories of cases, holding that principles allowing a nonsignatory to enforce an arbitration clause against a signatory may not allow a signatory to enforce arbitration against a nonsignatory." *Wood v. PennTex Res., L.P.*, 458 F. Supp. 2d 355, 365 (S.D. Tex. 2006) (citing *MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 62 (2d Cir. 2001)). "Basic fairness principles more readily favor holding a *signatory* to a contract to which it specifically agreed." *Legacy Wireless*, 314 F. Supp. 2d at 1055.

Moreover, the plain language of the Client Agreement limits its applicability to only the signatory parties themselves and only as to a defined set of disputes. Paragraph 6 makes repeated reference to "the parties." At no time has Mr. Brunet been a party to the agreement. Likewise, paragraph 6 further limits the disputes subject to arbitration to those "arising from" (i) the account maintained by MHG, (ii) any transaction "involving" with Smith Barney <u>and</u> MHG, or (iii) the construction of the Client Agreement or any other agreement between Smith Barney and MHG. Mr. Brunet submits that a non-party cannot be compelled to arbitrate where the agreement limits arbitration to only the contracting parties and only for a narrow set of disputes. *See e.g. Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th

Cir.1983) ("'arising hereunder' is intended to cover a much narrower scope of disputes, i.e., only those relating to the interpretation and performance of the contract"); *Good(e) Business Systems, Inc. v. Raytheon Company,* 614 F.Supp. 428, 429 (W.D.Wis.1985) ("arising under" construed narrowly to apply to disputes concerning contract itself).

In the end, all Smith Barney has done in its Petition is show that Mr. Brunet made investment decisions on behalf of MHG with regard to the account at Smith Barney. That fact has never been in dispute. However, that is not enough, because even if Brunet and MHG had an agency relationship, it is settled that "an agency relationship generally does not, itself, justify departure from the principle that a nonsignatory may not be compelled to arbitrate." *Id.* "The Second Circuit has cautioned that 'conclusory allegations of a general agency relationship between a signatory and non-signatory do not suffice to compel . . . unwilling non-signatories to arbitrate under that theory.'" *Masefield AG v. Colonial Oil Indus., Inc.,* 2005 U.S. LEXIS 6737, *15 (S.D.N.Y. Apr. 18, 2005) (quoting *AICO Int'l, E.C. v. Merrill Lynch & Co.,* 98 Fed. Appx. 44, 46-47 (2d Cir. 2004)). Smith Barney simply has not satisfied its burden to prove how Mr.Brunet's relationship with MHG justifies coercing him to binding arbitration when it is undisputed that (i) he never agreed to arbitrate and (ii) the plain language of the Arbitration clause does not include him within its purview.[3]

### B. Smith Barney Failed to Establish that Mr. Brunet is Equitably Estopped from Avoiding Arbitration

As with the agency theory, "federal courts have been hesitant to apply the estoppel theory against nonsignatories." *Legacy Wireless,* 314 F. Supp. 2d at 1055. "Requiring nonsignatories

---

[3] The Court should not accept any new evidence or explanation supporting this agency theory for the first time in a reply memorandum from Smith Barney. If Smith Barney seeks to do so, Mr. Brunet respectfully requests the opportunity to respond to such matters.

to arbitrate introduces an element of unpredictability to parties' private affairs, thereby compelling a greater degree of vigilance in applying arbitration clauses. Courts, therefore, have applied a more rigid standard when a signatory seeks to use estoppel to compel a nonsignatory to arbitrate." *Id.* at 1055-56. That is because "[i]t is more foreseeable, and thus more reasonable, that a party who has actually agreed in writing to arbitrate claims with someone might be compelled to broaden the scope of his agreement to include others." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361 (5th Cir. 2003).

"Estoppel of an unwilling non-signatory requires a showing, absent here, that the non-signatory 'knowingly exploited' the benefits of an agreement with an arbitration clause and derived a 'direct benefit' from the agreement." *AICO Int'l, E.C. v. Merrill Lynch & Co.*, 98 Fed. Appx. 44, 46 (2d Cir. 2004); *accord Am. Personality Photos*, 589 F. Supp. 2d at 1333-34 (discussing *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060 (2d Cir. 1993), and *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773 (2d Cir. 1995)).

For the benefits to be direct, they must "flow[] directly from the agreement." *MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001). In *Deloitte*, for example, the company sought to be compelled into arbitration did not sign the agreement authorizing use of a trade name, which contained the arbitration clause. But since the company used the trade name under the terms of the agreement, and directly received revenue from such use, the Second Circuit held it was estopped from arguing it was not bound by the arbitration clause in the agreement. *See Deloitte Noraudit A/S*, 9 F.3d at 1064; *see also Legacy Wireless*, 314 F. Supp. 2d at 1056 (finding non-signatory directly benefited because it received 50% of the revenue collected by a signatory under the agreement). "By contrast, the benefit derived from an agreement is indirect where the nonsignatory exploits the contractual relation of

Case 1:09-mc-21020-PCH   Document 4   Entered on FLSD Docket 05/12/2009   Page 11 of 14

CASE NO.: 09-MC-21020-HUCK-O'SULLIVAN

parties to an agreement, but does not exploit (and thereby assume) the agreement itself." *MAG Portfolio*, 268 F.3d at 61.

Here, Mr. Brunet did not derive any direct benefits from the Client Agreement. He never **personally** (i) sought to enforce any rights under the Client Agreement, or (ii) received any services or other benefits from Smith Barney as a result of the Client Agreement. Likewise, until this shortfall arose in the MHG account, Smith Barney never claimed that Mr. Brunet was personally liable. (*See* Brunet Dec. at ¶ 7). As Smith Barney concedes, at most, MHG paid a fee for Mr. Brunet's services as an investment manager. (*See* Petition, p. 9)  Any such fees would have been earned whether the MHG account was at Smith Barney or another institution. The "Client Agreement, and [Mr. Brunet's] resulting ability to trade in and manage the Account," thus were irrelevant to the manner in which Mr. Brunet carried out his management services for MHG. (*Id.*)  Thus, nothing in the Client Agreement touched upon the services provided by Mr. Brunet such that it could be said that he "exploit[ed] (*and thereby assume[d]*) the agreement [him]self." *MAG Portfolio*, 268 F.3d at 61. Indeed, any investment management fees paid by MHG were paid to Pinnacle Capital Ltd. and not to Mr. Brunet personally.[4] (*See* Brunet Decl., ¶10)  Such an indirect benefit is not enough to trigger estoppel. *See Veera v. Janssen*, 2005 U.S. Dist. LEXIS 13671, *11-15 (S.D.N.Y July 5, 2005) (finding non-signatory not estopped because benefits flowed to non-signatory's company rather than non-signatory individually).

---

[4] Smith Barney initially sought to also invoke arbitration against Mr. Brunet's company, Pinnacle. (*See* March 24, 2009 arbitration demand from Smith Barney, attached as Ex. 2)  Given that the Petition only seeks to compel Mr. Brunet to arbitration, it appears Smith Barney has abandoned that effort. Inexplicably, Smith Barney does not demonstrate why Mr. Brunet would be **individually** required to arbitrate but his company would not be.

-11-
LAW OFFICES
SHOOK, HARDY & BACON LLP
MIAMI CENTER, SUITE 2400, 201 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-4332 •TELEPHONE (305) 358-5171
607656v2

The Second Circuit's decision in *Thomson-CSF* demonstrates why the benefit Mr. Brunet derived from the Client Agreement was indirect. In that case, the non-party to the agreement containing the arbitration provision used the agreement as a mechanism to force a competing company out of the market. Although the non-party clearly exploited the agreement as a mechanism to garner a greater share of the market, that benefit was indirect. The Second Circuit held that such indirect benefits are "not the sort of benefit which this Court envisioned as the basis for estopping a nonsignatory from avoiding arbitration." *Thomson-CSF*, 64 F.3d at 779.

Similarly, here, any direct benefits of the Client Agreement were received by MHG – with its ability to buy and sell securities – and by Smith Barney – with its ability to earn their commissions/fees on MHG's trades. That Pinnacle Capital Ltd. may have "exploited" the relationship between Smith Barney and MHG by earning a separate fee from MHG does not render any such fee a direct but, rather, an indirect benefit of the Client Agreement. This simply is not like the cases cited by Smith Barney where a non-signatory (like Mr. Brunet) sued a signatory (like Smith Barney) under an agreement containing an arbitration clause such that estoppel would prevent the non-signatory from avoiding the arbitration clause. *See Bridas*, 345 F.3d at 362. Mr. Brunet has never contended that he was – much less has he sought to enforce – any rights under the Client Agreement.

Smith Barney seeks to compel Mr. Brunet to arbitration pursuant to clause in an agreement to which he was not a party. This is arbitration by coercion and not consent. *See EEOC v. Waffle House, Inc.*, 534 U.S. at 293. The Court should deny the Petition.

## IV. CONCLUSION

Mr. Brunet never agreed to arbitrate any purported claims that Smith Barney may now believe it has against him. He is not a party to any arbitration clause with Smith Barney and has

never sought to enforce any rights – because he has none – under the Smith Barney Client Agreement. Likewise, Mr. Brunet never received any direct benefits under the Client Agreement such that he would be estopped from challenging arbitration with Smith Barney. For the foregoing reasons, Respondent Alexis Brunet respectfully requests that the Court deny Smith Barney's Petition to Compel Arbitration.

Respectfully submitted,

SHOOK, HARDY & BACON LLP
Attorney for Respondent, Alexis Brunet
201 South Biscayne Boulevard, Suite 2400
Miami, Florida 33131
PH: (305) 358-5171 / FX: (305) 358-7470


BY: /s/ *Humberto H. Ocariz*
Humberto H. Ocariz
Florida Bar No.: 740860
Email: hocariz@shb.com

CASE NO.: 09-MC-21020-HUCK-O'SULLIVAN

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 12, 2009 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached service list in the manner specified.

By: /s/ *Humberto H. Ocariz*

## SERVICE LIST

Coren H. Stern, Esq.
cstern@bressler.com
Bressler, Amery & Ross, PC
2801 SW 149 Avenue, Suite 300
Miramar, Florida 33127
PH: 954-499-7979 / FX: 954-499-7969
*Service by CM/ECF*