UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-MC-21020-CIV-HUCK

In The Matter Of Arbitration Between

SMITH BARNEY, a division of CITIGROUP
GLOBAL MARKETS, INC.,

    Petitioner,

v.

ALEXIS BRUNET,

    Respondent.
    _____/



CLOSED CIVIL CASE

## ORDER DENYING PETITION TO COMPEL ARBITRATION

This matter is before the Court upon Petitioner Smith Barney's Petition to Compel Arbitration (the "Petition"), filed April 17, 2009. Smith Barney seeks an order compelling Alexis Brunet to submit to arbitration. For the reasons discussed below, the Petition is denied.

**I.   BACKBROUND**

In February 2003, MHG Holding Trust ("MHG"), a British Virgin Islands corporation, opened a securities account with Smith Barney. To do so, MHG, through its agent, Alexis Brunet, completed and signed Smith Barney's standard "Account Application, Client Agreement and Substitute Form W-9 Request for Taxpayer Identification Number" (the "Client Agreement"). (*See* Pet., Ex. A.) Per the Client Agreement, Smith Barney agreed to act as a securities broker for MHG and extended MHG a line of credit to buy and sell securities. MHG also provided Smith Barney with a completed boilerplate Salomon Smith Barney "Corporate Resolutions for Corporate Account" (the "Corporate Resolution"). (*See id.*, Ex. B.) The Corporate Resolution names Alexis Brunet and Maria Brunet as "Authorized Persons" empowered to manage MHG's Smith Barney securities account. (*Id.*)

Smith Barney claims that MHG's securities account is now in the red due to "an uncovered short position and unsecured debit balance." (Pet. at 3.) Smith Barney also claims

1

that Brunet, who signed the Client Agreement between MHG and Smith as an agent for MHG, is personally liable for the debt, but that he "refuses to meet his obligations." (*Id.*) The Client Agreement contains an arbitration clause. (*Id.*, Ex. A, ¶6.) Accordingly, Smith Barney demands that MHG and Brunet arbitrate the dispute pursuant to that arbitration clause. MHG, despite having been dissolved, has agreed to arbitrate.[1] (Pet. at 3.) Brunet, however, refuses to arbitrate. Brunet claims he is not bound to arbitrate because he is not a party to the Client Agreement. Brunet is correct.

## II.  ANALYSIS

Smith Barney—a signatory to the Client Agreement—seeks to force Brunet—a non-signatory—to arbitrate Smith Barney's claims against Brunet. "[A] party ordinarily will not be compelled to arbitrate unless that party has entered into an agreement to do so." *World Rentals and Sales, LLC v. Volvo Const. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008).[2] "It matters whether the party resisting arbitration is a signatory or not." *Id.* "A court should be wary of imposing a contractual obligation to arbitrate on a non-contracting party . . . ." *Id.* That said, "common law principles of contract and agency law allow a signatory . . . to bind a non-signatory . . . to an arbitration agreement under any of five distinct theories: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter-ego; and (5) estoppel." *Id.; see also Thompson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d. Cir. 1995). Smith Barney

---

[1] Brunet allegedly informed Smith Barney that MHG has been dissolved. (Reply at 2.)

[2] Smith Barney claims that New York law governs the question of whether Brunet is bound by the Client Agreement because the Client Agreement calls for the application of New York law. However, Brunet did not sign the Client Agreement in an individual capacity. Unless Brunet is a party to the Client Agreement under some other theory, then the New York choice of law provision would not apply to him. "It goes without saying that a contract cannot bind a nonparty." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). Presumably, Florida law governs whether Brunet is bound to honor the arbitration clause in the Client Agreement because the contract was executed in Florida. *See* Pet. at 4 n.2 ("the Client Agreement was executed in Florida"); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) ("[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists."). However, Brunet does not dispute that New York law governs, even citing numerous New York and Second Circuit cases in his opposition brief. Conveniently, New York and Florida law do not appear to differ significantly in applying the agency and estoppel theories that permit a signatory to bind a non-signatory to an arbitration agreement. Accordingly, because the parties have assumed that New York law applies, the Court will conduct its review according to principles of New York law. *See In re Scanlon*, 239 F.3d 1195, 1198 (11th Cir. 2001).

2

concedes that Brunet is a non-signatory to the Client Agreement, but argues that common law principles, namely agency and estoppel, warrant forcing Brunet to arbitrate.

### a. Agency

Brunet is not a party to the Client Agreement because he did not sign the Client Agreement in an individual capacity. It is black-letter law that an agent who signs a contract on behalf of a disclosed principal does not make a commitment in his individual capacity. *See e.g.*, Restatement (Second) of Agency §320 (1958) ("Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract."). Although Brunet's signature appears on the Client Agreement as an "Account Owner," the "Account Owner" is identified on the first page of the Client Agreement as "MHG Holding Trust." (Pet., Ex. A.) No other name is listed as an "Account Owner." Unmistakably, Brunet's signature as the "Account Owner" is that of an agent authorized to act on behalf of MHG. In fact, Smith Barney admits that Brunet was "an agent of MHG." (Reply at 5.) That Brunet was an agent for MHG is further demonstrated by the fact that Brunet's name and signature appear on the Corporate Resolution as a person "authorized and empowered . . . to act on behalf of the Corporation." (Pet., Ex. B.)

Nevertheless, according to Smith Barney, Brunet is required to arbitrate because he was an agent for MHG. (*See* Reply at 7) ("Respondent admits he was an agent of MHG. He is thus bound by the arbitration clause contained within the Client Agreement. It's really that simple.") However, the law is not that simple—and that is not the law. The traditional agency exception allows an agent to bind its principal (theoretically, a non-signatory) to an arbitration agreement. As the Eleventh Circuit has explained, "a non-signatory may be compelled to arbitrate under an agency theory if a signatory signed the arbitration agreement as the non-signatory's agent." *World Rentals and Sales, LLC*, 517 F.3d at 1247; *see also Thompson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d at 777 ("Traditional principles of agency law may bind a nonsignatory to an arbitration agreement."). Brunet, however, was not the principal of MHG. Rather, Brunet was MHG's agent and MHG his principal. Accordingly, the typical agency exception does not require that Brunet—an agent—submit to arbitration simply because his principal agreed to do so.

3

Putting a twist on the general agency exception, both Florida and New York courts have allowed an agent who did not sign an arbitration agreement in an individual capacity to use an arbitration agreement entered into by his principal as a shield to compel a signatory of the arbitration agreement to arbitrate its claims against the agent. *See e.g. Hirschfield Productions, Inc. v. Mirvish*, 88 N.Y. 2d 1054, 1055 (N.Y. 1996) ("The question is whether the arbitration clause was meant to cover defendants, nonsignatories, ***permitting*** them to compel plaintiff to submit to arbitration."); *Nardi v. Povich*, 824 N.Y.S. 2d 764 (N.Y. Sup. 2006) ("employees or disclosed agents of an entity that is a party to an arbitration agreement are ***protected by*** that agreement") (emphasis added); *Qubty v. Nagda*, 817 So.2d 952, 954 (Fla. App. 5th 2002) ("agents must be ***afforded the benefits of*** arbitration agreements made by their principal") (emphasis added). In those cases, the courts held that the non-signatory agents were entitled to the protections of the arbitration agreement between their principal and another signatory because it was reasonable that a party who agreed to arbitrate might have to arbitrate its claim against the agent. Smith Barney contends these cases stand for the proposition that it can use the arbitration agreement as a sword to force Brunet, a non-signatory who never agreed to arbitrate, to arbitrate. These cases, however, do not support Smith Barney's theory that a non-signatory agent is bound to arbitrate "where his alleged misconduct related to his capacity as agent of the corporation." (Pet. at 4.)

Smith Barney claims that *American Personality Photos, LLC v. Mason*, 589 F. Supp. 2d 1325 (S.D. Fla. 2008), supports its theory that Brunet must submit to arbitration. (Reply at 7.) Smith Barney suggests that *American Personality* holds that non-signatory agents such as Brunet can be forced arbitrate if the agent is accused of misconduct in their capacity as an agent. Smith Barney claims that Brunet's liability is "premised on his misconduct as an agent of MHG" and therefore he must submit to arbitration. (Pet. at 7.) However, in *American Personality* the court refused to order a non-signatory to arbitrate, making clear that "courts permit [an] agent to ***benefit from*** arbitration agreements entered into by his or her principals." *American Personality Photos, LLC*, 589 F.Supp.2d at 1331 (emphasis added). *American Personality* does not stand for the proposition that a non-signatory agent can be compelled to arbitrate solely because his principal agreed to arbitrate and he is accused of misconduct in his capacity as an agent. Smith

Barney's agency theory is not supported in the law and is not an adequate basis to compel Brunet to arbitrate.

### b. Estoppel

Smith Barney's next theory is that Brunet should be estopped from avoiding arbitration. New York and Florida courts will estop a non-signatory from avoiding arbitration where the non-signatory knowingly exploited the benefits of an agreement with the arbitration clause and obtained a direct benefit from the agreement. *AICO Int'l, E.C. v. Merrill Lynch & Co.*, 98 Fed. Appx. 44, 46 (2d Cir. 2004) ("Estoppel of an unwilling non-signatory requires a showing, absent here, that the non-signatory 'knowingly exploited' the benefits of an agreement with an arbitration clause and derived a 'direct benefit' from the agreement."); *World Rentals and Sales, LLC*, 517 F.3d at 1248 ("Estoppel also may bar a non-signatory from avoiding arbitration if the non-signatory relies on a contract containing an arbitration clause.").

Smith Barney contends that Brunet derives a "concrete and direct benefit" from the Client Agreement because it enables Brunet to trade securities, thereby allowing him to achieve superior returns for his clients, and consequently earn commissions, which then purportedly flow to Brunet. (Pet. at 9.) This, however, is not a direct benefit. To be direct, "[t]he benefits must be direct-which is to say, flowing directly from the agreement." *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC*, 268 F.3d 58, 62 (2d Cir. 2001) ("By contrast, the benefit derived from an agreement is indirect where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself."); *see also Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1062 (2d Cir. 1993) (non-signatory obtained "direct benefit" where it obtained and exploited the right to use the name "Deloitte" pursuant to a license agreement entered into by an association to which non-signatory belonged). However, unlike the non-signatory in *Deloitte Noraudit A/S*, Brunet derives no direct benefit from the Client Agreement. Indeed, even if Brunet is a beneficial owner of MHG—an issue the Court does not decide—there is no right or benefit "flowing directly" from the Client

Agreement to Brunet. *MAG Portfolio Consultant, GMBH*, 268 F.3d at 62. Accordingly, Brunet should not be forced to arbitrate under an estoppel theory.[3]

### III. CONCLUSION

Brunet never agreed to arbitrate or waive his access to the courts. Smith Barney has not established that "common law principles of contract and agency law" demand that Brunet submit to arbitration. Accordingly, the Petition is denied, and the Clerk shall close this case.

DONE AND ORDERED in Chambers, Miami, Florida, June 29, 2009.

Paul C. Huck
United States District Judge

**Copy furnished to:**
All Counsel of Record

---

[3] Even under the standard for estoppel adopted by the Eleventh Circuit, Brunet should not be estopped from avoiding arbitration. In Florida, "application of equitable estoppel is warranted . . . when the signatory raises allegations of substantially interdependent and concerted misconduct by both the nonsigantory and one or more of the signatories to the contract." *Becker v. Davis*, 491 F.3d. 1292, 1304 (11th Cir. 2007); *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 948 (11th Cir. 1999); *but see World Rentals and Sales, LLC*, 517 F.3d at 1248-49 ("Notably, however, none of our cases allow a *signatory* to force a *non-signatory* into arbitration simply because the signatory alleges a common scheme involving the non-signatory and another signatory.") Smith Barney does not raise allegations of "substantially interdependent and concerted misconduct by both the nonsigantory and one or more of the signatories to the contract." *Becker*, 491 F.3d. at 1304. Accordingly, estoppel is inappropriate.